The case is Young v. Schweitzer for the Appellant Mr. McClellan and for the Appellee Mr. Ward. Justices of the Court, good morning. Thank you for the opportunity to get over the road jitters. I'll try to be succinct and would ask at some point if I might reserve five minutes for rebuttal if necessary. This matter was timely filed on behalf of Terry Young. Within a few weeks of that time his counsel, which would be me, having been snickered by insurance companies in the past, made sure that I personally issued and dropped off for service a summons. At that time, and this is not a record, and one of my problems with this whole case right now is that we never had a hearing. There were things that the judge asked about that I was never given an opportunity to respond to. I will simply tell you at that time I had no assistance. My daughter had been with me. She was having a baby. I hand wrote the summons. I took it over. I dropped it off. Over the course of the next few months, every time I realized that, well, the summons should have been served by now, I would do it again. Finally, we gave up on the tech systems who we had a long relationship with, used an outfit called meter, and they achieved service. Unfortunately, not until early August, I think it was. It was from December to August, but there were at least four efforts. I don't recall right this moment how many, but there were efforts in the meantime to achieve service. Never received a return. Counsel entered the case, made their motion. There's a 90-day rule in Champaign County, but it's not very often observed for calling a motion. Finally, they plugged into the system, got a briefing schedule, and we reengaged. At that time, as is shown in the record, we were unable to secure anything from the tech systems to show why they had not completed or certainly not completed service, but had not got the returns back to us. At the last moment, you can again tell by the timing in the record, we still didn't have anything from them. I did a quick affidavit in support of the response to their motion in which I outlined what we had done. Now, here's the crux of it. They choose, and ultimately the courts seem to take the position, that none of these things I'm telling you happened at all. I didn't see it that way. I thought it was a pretty simple factual matter. There was an indication at one point that the judge was not going to accept any of the affidavits, but then he cited from them in his opinion. I used a form where the factual matters are in the motion, and then I signed an affidavit referring, not individually, but referring to the factual matters. And those are the matters that I have just shared with you. I never got really a direct attack on what I thought were the factual matters. It was simply a matter of, that doesn't count. So it was more, it seemed to me, more a question of not my veracity, but the form. And I think the form is appropriate. It may not be the best. A lot of things I've done in the last four years have not been the best, but I think it was sufficient. On top of that is the problem with not having a hearing. The judge asked questions in his opinion with no opportunity to respond. Why did it take so long? There were two or three questions like that that we could have easily responded to, but were not able to without having a hearing. I would have gladly called the young woman, she might be a little older than I am from tech systems, to explain what happened with the mail. She indicated in her affidavit, which was filed a few days after, that they had sent them to my old address. Nevertheless, that's what happened. And they went back to her, and they didn't follow up on it. I had that same experience with the other one. Did you ask for a hearing? Pardon? Did you ask for a hearing? I did. It was scheduled for a hearing right from the start. And then, as we got into the briefing, and I filed my affidavit from the tech systems, and I think there was one other thing. But I contacted the court office, and I filed a motion for leave to file these affidavits. And the word that came back to me was, don't worry about it now, we'll take care of it at the hearing. They are treated as summary issues. I understand they have the discretion to do that, but it seemed to me that when the court asked questions in his order, that there should be a hearing, there should be some opportunity. There is some case law, it's not directly on point, but it certainly suggests that when there are factual questions like this, it's preferable to have a hearing. So the judge, to me, and of course I'm the one who's most likely to be confused by all this, but it was a little confusing as to what he was accepting from the record and what he was not. And then he cited from one of the affidavits that would have been one of them that I asked leave to file late, except I thought he did. I thought he was referring to something and was simply sort of demeaning my efforts again. And on the second or third reading, it struck me, this isn't what he thinks it is. This is from another document. It doesn't relate to what he was speaking of as we got down to that point. Whatever you think about my efforts or anything else about this case, I think we and our clients are entitled to have an order that they can understand. And when a judge goes awry and makes reference to something that is clear in the final analysis that wasn't what he was thinking, wasn't what he intended to put in there, counsel in their response has suggested reasons that this could have happened. I think I kind of know what happened, but that's not the purpose of an order. It's not to leave you speculating as to why a judge may or may not have done something when it is something that's as clearly obvious and off-base as this where you're actually quoting something that you don't intend to quote. And I think that meets the standard for abuse of discretion. I would ask the court – I don't know quite how to say this. My veracity has never been challenged, and I've been at this a long time. I think the form is sufficient and should be accepted by this court, and I would submit to the court that the nature of the opinion, and particularly that one point of misquoting, are sufficient to overturn the decision to dismiss. Either to overturn it, send it back for a hearing. At this point, I just assume you just overturned it. Thank you very much for your attention. Thank you. You'll have additional time for questions. No other questions at this point. Thank you. Thank you, Your Honor. May it please the court? Counsel? Counsel. Your Honors, the problem here is not having a hearing. The problem here is lack of documentation as to service on the defendant. There was an opportunity to file response, which was filed. There was an opportunity to file affidavits, which were filed. There is no law, except in the area of personal jurisdiction, which is the case that was cited by counsel, saying that there should be a hearing in substitute service with the Secretary of State. But there is no law saying that in a case such as this, there has to be a hearing. The hearing was set by the court. I don't recall counsel asking for a hearing. The hearing was set by the court in a docket entry and then was vacated by the court. As to the lack of documentation here, the one thing is that there are a couple of things having to do with addresses that I think are very, very important here. Number one, the address of plaintiff's counsel was incorrect, and there is no dispute as to that. There was an incorrect address. But that brings up what I call the return of the returns, which adds to the lack of documentation here. The returns on service were sent to that address, and according to Chris Douglas, came back by U.S. Mail as not deliverable. Now, the problem with that is that twice Chris Douglas had those returns that are not in the record and we don't know where they are, had them twice in her hands. Once when she sent them, then they came back. What happened to them? We do not know what happened to them. They are not on file. They were not filed. The logical thing is if you can't get a hold of the attorney, file them with the court. Rule 102 talks about filing the returns with the court. So Chris Douglas had her hands on it twice, but we don't know what happened to them. We don't know where they are. We don't know what happened to them, and why weren't they filed. As far as the affidavit of Chris Douglas, Chris Douglas talks about the fact that in the neighborhood of 20 attempts were made to get service on the defendant. Talks about a long period of time. This is a fact. This is 103B case. This is fact intensive. And giving a nonspecific affidavit such as that is insufficient. Were there any attempts in January? We say that there couldn't have been any in January, February, or March. Or up until April 27 of 2012. Because there aren't any summonses for that period of time. The only summonses of record are April 27, June 5, and July 31. So we know that for at least, since the filing of the case, for about four and a half months, nothing. Nothing was done. We don't know if there were, just because there's a summons in April 27, just because there's a summons on June 5 doesn't mean there were any attempts. We don't know when those attempts were made. Did they start making attempts six months later? We don't know that. Seven months later? We don't know that. There's the, one of the cases that we cite, Apicciato. The Apicciato case talks about nonspecific affidavits. And it says at page 76, However, in the most conclusory manner, the affidavit alleged that diligent efforts were made to locate the defendant. The affidavit did not mention any specific things the plaintiff did in that regard. It's the same with Chris Douglas' affidavit. We don't know what that means. What is in the neighborhood of 20? How many is that? We just don't know. It's a nonspecific. And because this is a 103B motion, that is very, very important. The other issue on addresses is that from the very beginning, even the summons, which we say was never issued in December of 2011, even that summons had the proper address of the defendant on it. Every summons, April had the same address. June had the same address. July had the same address. There are two cases from this court, Penrod v. Sears Roebuck & Company and Smith v. Linold Construction, Inc. Both of them talk about the fact that the plaintiff knew from the beginning the location of the defendant. A lot of these 103B cases, as your honors know, have to do with finding the defendant. In this case, in Penrod and in Smith, it was known from the beginning. It still took eight months, two days in this case, to get service. In Penrod, it was eight months, ten days. In Smith, it was eight months, ten days. In Penrod, five and a half months in Smith. Did I say days again? I meant eight months, ten days. In Penrod, five and a half months in Smith. A critical fact, and also with respect to the addresses, the July 31 of 2012 summons was served in seven days when it was given to someone else. Seven days. The cases in Penrod and Smith talk about the fact that knowing that, knowing the address and the fact that there was a short period of time when the last attempt was a short period of time by another entity, by another process server, shows that the defendant was amenable to service long before the defendant was actually served. In Penrod, the last attempt, 11 days. Smith, two days. In our case, it was seven days. But it still took eight months and two days. There are also, in the brief, they also talk about having talked to Chris Douglas for the first time, I think they say since this process began, I believe is the word, on February 1, 2013. That's six months after service was had. Now they talk to Chris Douglas. Nothing, there was no communication prior to that with Chris Douglas. Even though there were no returns, they didn't receive any returns, there was nothing. The phone number and the fax number remained the same of plaintiff's attorney. But the fax wasn't used, I guess they played phone tag, but again, Chris Douglas could have filed those returns. Or could have called 411 or the operator to try to find the location of the plaintiff's attorney. But another thing in the reply brief of the plaintiff is that the delays, this is on page three of the reply brief, the delays were not attributable to the defendant. Now that's also a critical matter. There was just, this is just the plaintiff being unable for eight months and two days to get service. If you read the judge's order, at least it's clear to me as a formal trial judge, that every delay that had happened up to that point was being factored into the decision. I.e., you filed the complaint at the last minute, he makes reference to other things being filed late, or being filed at the last minute, or late, I think he makes a reference to Douglas' affidavit. Is it a part of the trial judge's discretion to take that into account? Or is the trial court to focus on specifically when was service? I think it's probably more appropriate to focus on service. But I think that that goes from the date of the filing of the claim. So you're factoring that into diligence? Oh, absolutely. And that's the starting point. That's the starting point. But it's not just the diligence on the service. It's the diligence on getting this before the court and somehow getting it resolved. Well, in my mind, all of that is the same. Because you have to have a starting date. The eight months, two days runs from the date of the filing. Why? Because there is a non-deligible duty to get this case moving. Which is a good segue into my closing part here. But that's my answer, Your Honor. I think yes. I think that that was considered by the court. I think it had to be considered by the court. Because it's all a part of the delay in service. Well, put another way, isn't filing a complaint on the last possible day the equivalent of timely filing? Well, I think it is. I think it is. So why should it be factored in? It's only factored in. I'm not saying, and maybe I didn't make this clear, I'm not saying that you factor in that it was on the last day. I'm saying that you factor in the day it was filed. That's the starting point. I don't think, I agree with Your Honor, it probably doesn't matter that it's the last day. I agree with that. But there has to be a starting day for the diligence. And that is the day of the filing, regardless of when it is. And, of course, if the diligence is prior to that, it's a dismissal without prejudice and with if it's after. But that's, thank you for asking that question because I probably didn't make that clear in my answer to Justice Connect. But here is the bottom line. The Penrod case, Penrod v. Sears, Roebuck & Company, talks about a non-delegable duty on the part of the plaintiff to bring the case to a prompt conclusion, to assure summons was issued, to assure summons was delivered for service, and to assure the prompt and proper returns are filed. Now what does that mean in this case? It means that giving a handwritten summons to the clerk and telling the clerk to note receipt of the summons does not discharge that duty. It means that placing the summons in a drop box that's attached to a wall in the courthouse does not discharge that duty, especially if you don't talk to the person whose box that is until six months after service. It means that making certain that the return, not making sure the return is filed with the court does not discharge that duty. And it means that not following up with Chris Douglas when no returns were forthcoming does not discharge that duty. Now it's our position that there was no obese discretion in this case and that both orders of the trial court should be affirmed. If there are no other questions, I am finished.  I have met with much the same sort of position in that questions continue to be raised which I cannot appropriately answer. He says we don't know, nothing was done. Well, I know things were done, and I could expound further on them and develop further evidence from Chris Douglas and others, but the fact of the matter is when they filed their motion, then it's incumbent on them to get the scheduling date to go ahead and file the briefs and all of that. That pushed things back quite a bit, and all of that time we were unable to contact Chris. She has given me an explanation regarding her son's lackadaisical handling of phone messages, but in any event, they never got in touch with us. It hasn't been since yesterday I got a piece of mail that was sent to 102 West Main instead of 123, and now I do it myself, 102 East Main, which was the address she would have had in her records, and 123 West Main where we now are housed, half block. I had similar problems with other mailings where my bank, for instance, just didn't contact me after they came back. Again, that's not a record, but it's something that we could have, and could now, and now I guess I haven't since brought forth. I don't know whether the judge was trying to single me out. We've been acquaintances for a long time, but I too was troubled by the simple fact that he's pointing to things that seem to reflect a poor attitude towards my efforts, and yet, as you point out, you file things on the last day. People don't have money, they don't have this, they don't have that. Sometimes you're still playing with the insurance company, and the problem that I had particularly was this inability to make the connection with Chris Douglas. It seems to be acknowledged, regardless of my statements and what I think is in the record, that on April 27th, counsel seems to accept that there was a summons issue. Well, April 27th is well within the usual time for such an action. It's not six months or eight months. Sorry that this is eight months. Thank you. Thank you, counsel. We'll take this matter under advisement and stand in recess until the readiness of the next case.